Okay, the next argued case is number 16, 1591, Edmondson v. Snyder. Ms. Mystician. Please the court. My name is Barbara Mystician. I'm here representing the appellant Margaret Edmondson, who's the surviving spouse of the veteran Cecil Edmondson. I'm here. This is a constitutional question, specifically procedural due process. And we are arguing that because the veteran here did not get a fair hearing, because we're arguing that the outcome of this proceeding was essentially predetermined, because... So is there no equal protection claim on the table? No, not at all. But the requirement of actual exposure is so difficult to prove, given the nature of Agent Orange, that it combines with the soil, it combines with the water, and it goes through the food chain, and it's a dioxin, so it doesn't break down. So we can stay in the soil for decades. And it's further complicated in this case, because this veteran was on a covert mission. Prior to 65, which is what was covered by the Buckingham article, that's when the Air Force came in. Prior to that, the CIA was there with their covert mission, which was Air America. And they would have the records for what happened there then, but those records are not... They're not discoverable. They're exempt from FOIA. I understand that the facts are such that it poses difficulties, but I need to focus a little bit on what legal issues we have in front of us. So we don't have an equal protection challenge. You're not making a facial challenge to the statute that gives preferences or that gives a presumption to those who actually served in Vietnam, are you? No, what we're getting to... No, what I'm challenging is the way it's applied to the veterans out to... So it's really more what you're saying is that, putting aside the statute, the fact that there is any really burden of proof with respect to this connection to herbicide, that that's the problem because the proofs are veterans such as the veteran here should get the benefit of the rebuttable presumption because... But again, you're not really saying that he should get it because those in Vietnam get it. You're just saying that he shouldn't have to have this separate burden because it is an impossible burden to satisfy. Is that what you're saying? That's it. And part of the reason for that, especially in this case, is that the records that would be necessary to establish his case are in the possession of the government and cannot be released for however justify the reasoning. And our argument is that if they're in possession of the records that would establish his case and cannot or will not release them, the financial consequences of that should be on the government, not on the veteran. These are records of herbicide use during this period in Laos that you say are not available? There are articles which I submitted and which I referenced. There's public documents that talk about, yes, there was spraying, but the actual documentation of it would be in the possession of the CIA because they were the ones who oversaw the spraying there. And those documents would be part of operational procedures and those are exempt from FOIA. So the problem is where if this were just somebody within the Republic of Vietnam, say, that veteran would just have to present his service records. And that would say, okay, you were stationed in Vietnam, everything's fine. But when you have somebody who was outside Vietnam, it's not enough for him to get his service records. They also need the records within the possession of the government to show where and when spraying was. You're saying that the application of the government's regulation that applies to everybody that served outside of Vietnam, but the application of that regulation is a due process violation to the extent that they're purporting to apply it to those veterans who served in Laos because of this covert? Well, for that reason, for the records, but they're also the actual exposure element of it is basically impossible to prove. And that's also illustrated by the fact that I couldn't find any cases where it was actually established. There were a few where there was a remand, but I couldn't find any cases out there where they actually found actual exposure. And the fact that, I mean, the statute clearly indicates or sort of intends or anticipates that some people outside Vietnam should get these records. But for a long period of time, no one has been able to establish actual exposure. It's a daunting and virtually impossible standard. And I think that if the actual exposure were given a more broader or a more, a less impossible, more like. Well, as I understand what the Veterans Court found is that even if we were to conclude that certain people who served in Laos at certain periods of time, that the regulation of putting a burden of proof on them would be problematic because there was clear evidence of spraying during that period of time, that the time frame that you're focused on, that there is no factual predicate for even making that due process argument. The factual predicate meaning there was no spraying during that time or? Yes. But there is because we have the statements from, we have the statements from the veteran. We also have numerous articles that I cited to that talk about their having been spraying during that time by the CIA. And there are also, and the one article that I cited actually dealt with the Buckingham article saying that Major Buckingham was aware of the spraying and wasn't allowed to talk about it. Let me see if I have that here. That is on JA57. It says Air Force historian William Buckingham of the 1982 report Operation Grand Chan had access to Laos and Cambodia data but was not allowed to disclose it. Maps of spraying missions released for Vietnam research show many flights extending to the borders of Laos and Cambodia where the lines abruptly stop. So there is evidence out there. There is a factual predicate to support that there was spraying prior to the 1965. And so that bolsters the veteran's statements that there was spraying prior to that. So there is sufficient evidence here that would permit reaching the further step of evaluating the actual exposure component of it, which would require allowing or would necessitate applying a more lenient or more general definition of what would satisfy actual exposure. Because it's just too narrow given the properties of Agent Orange. Let's see. Well, let's see it from the government here. We'll save you some extra time. I think there is an absence of a factual predicate here. The military that Mr. Edmondson was working with, the MAG, Military Assistance Advisory Group, put him in Laos in 61 to 62. And he left in August of 62 or October of 62 sometime there. The first evidence of spraying in Vietnam is this court and the court below in this case, but this court also in Haas when going through 1116 and the challenge of the appellants in that case to the definition of what was Let's assume for the purpose of my question that exposure is not disputed, except that it wasn't in Vietnam. Well, if Mr. Edmondson had evidence of direct exposure, he wouldn't need the presumption. He would be service-connected. That would be like any other veteran with any other claim. If they had evidence of direct service connection, in other words, if they had the sufficient evidence that showed that they were actually subject or in an area where there was spraying, he would be able to establish direct service connection. Well, we have to assume because I remember at the time that this presumption was enacted, how many difficulties were encountered by veterans to establish in Vietnam, set aside Laos. And so what this court said in Haas in actually doing a rational basis review, but particularly with respect to trying to find the correct definition of Republic of Vietnam and its inland waterways, it said, this court held that the line that was drawn, in other words, within the Republic of Vietnam and its inland waterways was a rational line, given that Congress was trying to figure out how it could basically benefit the great majority of folks who may have been exposed to herbicides, but not to extend it to those folks who, for the most part, were not exposed to herbicides. And that would include, and the issues there were in Haas, folks who were off the shore of Vietnam, a couple of miles or even within a mile on these boats that couldn't go into the harbors. Here we have the same question, an individual who was in Laos, but more so what we have is an absence of a factual predicate. In this case, unlike those folks who would be able to demonstrate, probably be able to demonstrate some exposure if they were in Laos in 1965, in December 1965 and after, when the United States started bombing Ho Chi Minh Trail and dropping herbicides down to clear the leaves, this individual was no longer in Laos when that happened. He left in 1962. Right, but the crux of his argument is that, okay, we get the fact that if we were in Laos after 1965, we'd have a different showing that we could make because that's what was going on. The point is that in 61 and 62, he says it was the CIA who was secretly doing this and there's no way to prove it because all of those are classified documents. First of all, he was with the MAGs, the M-A-G-s. He was a uniformed individual and history shows that they were there until 1962 when the United States entered into the Geneva Accords and the United States agreed to pull its military personnel out of places like the Russians to do the same. What happened next, which was after Mr. Edmondson left, is when the CIA came in because when the Chinese and the Russians didn't pull out, the United States stayed there in the form of the CIA but not in the form of military individuals. Mr. Edmondson didn't transfer to the CIA like some of his colleagues did. Mr. Edmondson left and went back to the United States. So he's not even there. Factually, he's not part of the CIA operation that took place after 1965 when MAG pulled out. But again, the question isn't even what was MAG. The question is, has the United States, and we think it has, starting in the late 70s, even continuing until today, in the form of the Congress, in the form of the VA, in the form of the military service organizations, been trying to grapple with the effects of using herbicides in Vietnam during the Vietnam era. And they've come up with detailed statutes and regulations to address that situation. And the VA has actually gone, and as we say in the footnote, I believe it's six in our brief, gone. And where you, as an individual, don't meet the requirements of 1116's presumption, you may still get, effectively, the benefits of such a presumption if you can show that you were in an area outside of Vietnam which has been recognized by the United States military as being an area where herbicides were used. That would include Laos, but after December 1965. But the requirement of the presumption is minimal. That's the reason for the presumption. And in this case, the guidance that the regional offices and boards follow, Your Honor, is basically consistent with the presumption for those folks outside of Vietnam, but within the recognized areas where herbicides were used in the area in greater Southeast. I thought your argument was that if you're not subject to the presumption because you're outside of Vietnam, the presumption doesn't apply. You have to go back to... That's the legal answer, Your Honor. You're correct. That's the legal answer. But isn't that curious? Can that have been the legislative intent, or was it just more that all of the cases which were arising were flowing from service in Vietnam? It was clearly both. The legislative intent was to draw the line around the Republic of Vietnam based upon the fact that the evidence showed that everybody, all evidence, scientific evidence at that time showed that those within the land mass of Vietnam were those most likely to be exposed and therefore could suffer consequences. Congress, based on that science, did not extend the presumption beyond service in Vietnam during a particular time period. What the VA has done with its practices is recognize that in the course of defining what 1116 should be, the military's contribution to that analysis was to identify where they used herbicides. And it includes not in the era of 61, 62, but after that when herbicides became more prevalent in the 65, 66, and especially 67 through 68 time period. They recognized that there were emissions that were flown, as referenced by counsel, into Laos and Cambodia, and the Laos particularly with respect to the Operation Ranch Hand, which is described, and that was the defoliation to support the attack on the Ho Chi Minh Trail. And what the VA has done is, although it's not required under 1116 to do this, it has provided a sort of pathway forward for folks who can establish that they were in those areas. In other words, as the Court knows, the basic tenets of trying to establish service connections, places, time, and circumstances. I was at a place at a particular time and this is what I was doing. And people make those arguments with facts to try to support that they can meet the in-service prong of the service connection question. If we decide that there is no factual predicate for the due process claim here, do we need to sort of work our way through the jurisdictional hoops? No. I think the Court is free, obviously, through exercising its discretion to ignore all these jurisdictional hoops that are raised in the beginning, but we raised them because we thought that the Court should be aware that we were thinking about them. But I guess my problem is, don't we have to assess our own jurisdiction? I mean, how do we get to there's no factual predicate? Based on my questions of your friend on the other side, what I'm understanding is this is not really an attack on the statute. So this would get to the point of whether or not there was waiver, and that would depend on whether or not the lower court had the authority to pass on the constitutionality of rules and regulations. Right. Or the Court could understand the question to be an attack on an application of law or a dispute about facts, and find that on that basis, under 7292D, it doesn't have jurisdiction over the case in that, to the extent there's a due process question, it's a question in name only, which would allow the Court to not address whether or not certain questions were waived. If the Court was inclined to discuss the waiver question, as we suggested, we think that to the extent there was a facial challenge, which doesn't seem to be the case, that would implicate whether or not the Veterans Court had jurisdiction to entertain a facial challenge, but because if it didn't have that jurisdiction, it wouldn't matter because raising it would have been futile, so this Court could then look at the question. If we look at it more as an application question or just a general fairness question, it would seem that the Veterans Court probably does have jurisdiction to consider those kinds of questions, and so this Court could then review it as more of a standard challenge to due process, in which then this Court could find that, despite the label, what's just being argued here is that the constitutionally firm structure, I'm sorry. What's troubling is that I don't recall ever seeing anything in the statute which says that on identical facts, this statute applies in Vietnam and explicitly does not apply in Laos or Cambodia, for example. I'm not sure there's been a case like that, but in Haas... Or a case or in the legislative history, or whatever. I mean, this is sort of where perhaps some kind of due process arises, whether it identified Vietnam because there were a lot of cases arising from Vietnam and others hadn't arisen or weren't raised. I don't know, and that's really my question. I clearly am not the expert within this group here today, but I might suggest that one of the reasons why you may not see a lot of cases involving folks who are in Laos and Cambodia while spraying was going on, were those folks probably entered Laos or Cambodia from Vietnam. And so therefore, there would be no question about their already being covered by the presumption of 1116. Here what we have is a situation in which an individual was in Laos prior to the real hostilities as we know them in Vietnam, and was removed, again, prior to those hostilities really being ratcheted up. So those folks who had reason to be in Laos or Cambodia in the 65 through 68 time period probably traveled there across the Ho Chi Minh Trail from Vietnam, and therefore you wouldn't have these kinds of examples. You mentioned earlier about the VA's expansion of this statute, beyond its terms to allow people from Laos, Cambodia, and other places to receive these benefits. Does that also include the ships offshore that were held in the past case? No, they do not. What we referred to and what Your Honor is questioning is in the last footnote of our brief, in the VA guidance, in the VA manuals, we identify specific areas where herbicides were used, including Laos, including Cambodia, including Thailand, and if you were in one of those areas and can establish that you were exposed, although you don't receive the 1116 presumption, you do receive what I'll call evidentiary treatment as part of your direct service claim. It could be very similar in effect. It could be very similar in effect. But again, the folks in the blue water outside of Vietnam, that was what Haas was all about. But I was wondering if that could be, because as a matter of fact, they were exposed. I understand. Earlier, Your Honor, I admitted that I'm not the expert of the group that's sitting here today, and I recognize that. But here, I don't believe we have either a basis to extend 1116 or to extend even what VA has been doing as referenced in our briefs. Mr. Edmondson, as we noted, provided excellent service to his country, but he was removed before the United States was involved in using herbicides, and certainly before they were using them in Laos. Are there any questions? Any more questions? No. Mr. Haas. Thank you. Ms. Mastichio, you have some rebuttal time. I disagree with opposing counsel on the issue of factual predicate. I think, as I stated before, we have provided ample documentary evidence that the CIA was present in Laos during Mr. Edmondson's tour of duty, and although he was assigned to MAG during that time, he was still part of the CIA. And the problem facing him, being on this secret mission, was that these records, because the overall mission was overseen by the CIA, this is part of general operations, and those records are not discoverable. There's no dispute that he was not ever in Vietnam, right? That's not in dispute at all. And the Air Force, Operation Ranch Hand is clearly just, that's the Air Force, and the Buckingham article speaks only to the Air Force's mission there. And so that article of which the Veterans Court, the Board of Veterans' Appeals, and the Court of Appeals for Veterans' Claims took judicial notice of, it was a whole different project. It was overseen by the Air Force. What's your response to the point that Mr. Harkin says the CIA, to the extent you claim there was this covert operation, didn't even come in until after 62? But they did. They were there, and the articles that I included in the appendix, they vouch for that. They say that they were there as early as, starting in 1960, they were there. Now, they were more, it was more obvious perhaps after a certain point, but they were, according to this, they were there from 1960. But was it established that there was herbicide spraying at that time? According to this article, yes. And then there was a notation on JA-60, which talks about the above findings are clearly only a partial record herbicide use in Laos and Cambodia. Many additional sources remain to be examined, many of them classified. Among these are any and all CIA records. So it seems like here again that the veteran here is having to shoulder the financial consequences of the government's decision not to release records. Even though that decision is justified to withhold those records, it shouldn't be on the veteran's shoulders to lose out on benefits because of that. And certainly I think we've provided enough information here to set up a factual predicate to enable this court to reach the due process argument here. Did you, in the course of your preparation for argument, come across any reason or discussion in the legislative record or any place else about why the presumption was specific only to Vietnam? Well, I've seen articles. I saw in looking at the legislative intent for 1154, it was sort of talked about combat situations. That's not technically about the Vietnam, but it sort of goes to why certain combat types and records would be released. And they're talking about how records would be lost and how records wouldn't be kept. And that sort of goes along with what we're arguing here. As far as the reasoning behind why they chose Vietnam as opposed to outside Vietnam, I suppose the reasoning from what I got is that that's where the most pervasive spraying was. But again, that doesn't mean that that's where the only spraying was. And I think where we have provided documentation of spraying in Laos, and this is an area of law that's supposed to be, you know, 50-50, it's supposed to go to the veterans. So you have the veteran's statement saying, yes, there was spraying here. And we have articles saying, yes, there was spraying there during the time he was there. If we have 50-50, it should go in favor of the veteran. So we have a factual predicate set here that there was spraying there. And we have the government saying, you know, there's records, but we're not going to give them to you. So I just think that the argument here is that if they have the records, because they oversaw this project, so they're going to have the records just like the Air Force has the records of spraying in Operation Ranch Hand, the CIA is going to have records on Air America, but they're not releasing them. And all that falls on the veteran who did, he served. He served his country, and he shouldn't be penalized because the mission to which he was assigned was covert. Okay, any more questions? Any more questions? Okay, thank you. Thank you.